**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

ROMARIO V. WALLER, *
ADC #108263 *
*
Plaintiff, *
v. * No. 4:20-cv-00335-JJV
*
DALE REED, Deputy Director, *
Arkansas Division of Correction, *et al.*, *
*
Defendants. *

**MEMORANDUM AND ORDER**

## I. INTRODUCTION

Romario V. Waller ("Plaintiff") is a prisoner in the Varner Super Max Unit ("VSM) of the Arkansas Division of Correction ("ADC"). He has filed a *pro se* Amended Complaint pursuant to 42 U.S.C. § 1983 alleging that, on January 29, 2020, Defendant Sergeant Robert Blevins used excessive force against him to retaliate against Plaintiff for filing a grievance; and (2) Defendant Correctional Officer Jackenzie Titus failed to protect him from that use of force. (Doc. 10.) All other claims and Defendants have been previously dismissed without prejudice. (Doc. 13.) As relief, Plaintiff seeks compensatory and punitive damages.[1] (Doc. 10.)

Defendants have filed a Motion for Summary Judgment contending they are entitled to judgment as a matter of law on Plaintiff's claims. (Docs. 34, 35, 36.) Plaintiff has filed a Response, and Defendants have filed a Reply. (Docs. 39 to 43.) The parties have consented to proceed before me. (Doc. 20.) After careful review and for the following reasons, I find summary judgment is

[1] Plaintiff has sued Defendants in both their official and personal capacities. (*Id.*) But, sovereign immunity precludes him from recovering damages against them in their official capacities. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Kruger v. Nebraska*, 820 F.3d 295, 301(8th Cir. 2016); *Burk v. Beene*, 948 F.2d 489, 493-94 (8th Cir. 1991).

appropriate. Accordingly, Defendants' Motion for Summary Judgment is GRANTED, Plaintiff's remaining claims against Defendants Bivens and Titus are DISMISSED with prejudice, and this case is CLOSED.

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A).

When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of W. Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

## III. FACTS

The facts, taken from largely from Plaintiff's deposition and affidavit, and viewed in the light most favorable to him are as follows. (Docs. 34-1; 42.) On January 21, 2020, Plaintiff filed an informal resolution alleging Defendant Blevins, who is white, said: "You hear a nigger calling you so why don't you answer a nigger man." (Doc. 2 at 42.) Plaintiff did not say Defendant Blevins directed that comment at him, but rather, was repeating what he heard another inmate say. (*Id*.) On January 28, 2020, Plaintiff received a response saying Defendant Blevins denied making that comment or being in the area where it was made. (*Id*.)

On January 29, 2020, Defendant Titus and Correctional Officer Burton were conducting classification call in Cell Block 1, Tier 3. (Doc. 34-3 at 4-16.) Burton entered Plaintiff's cell, handcuffed him behind his back, and took him outside of the cell where he began to put shackles on Plaintiff's legs. (Doc. 34-1 at 11-15.) Defendant Titus was standing outside of the cell next to Burton. (*Id*.) Defendant Blevins and Correctional Officer Roncifer were two or three cells away also working on classification call. (*Id*.) Plaintiff says that while his left foot was in the air behind him so that it could be shackled by Officer Burton, Defendant Blevins walked directly up to him. (*Id*.) Plaintiff "took this as a threat." (*Id*. at 15.) To "diffuse the situation," Plaintiff told Defendant Blevins that it was disrespectful for him to use the "n-word." (*Id*.) According to Plaintiff, Blevins pointed at him. (*Id.* at 16.) Blevins then "turned around as if he was about to walk off and spun back around real fast and *tried* to push me in my chest." (*Id*. at 16-17) (emphasis added.) Plaintiff, who was standing on one foot says, Blevins "*touched* me on the chest and *pushed* me, I caught my balance a little bit. That's when I dropped my foot, and I stepped into him and headbutted him." (*Id.* at 17.) Importantly, Plaintiff admitted during his deposition that Blevins did *not* injure him in

anyway.[2] (*Id*. at 19.)

The parties agree that, at this point, Officer Burton took Plaintiff to the ground and finished restraining him. (Docs. 34-3 at 4-16; Doc. 42.) Plaintiff was then taken to the infirmary, where a nurse noted an "abrasion" on his head. (*Id*. at 18.) That minor injury could have been caused when Plaintiff' headbutted Defendant Blevins or Officer Burton took Plaintiff to the ground. The nurse noted Plaintiff was not in pain or distress and that he did not need any medical treatment. (*Id*.) Plaintiff then prevented officers from photographing his abrasion by placing his arms over his head. (*Id*. at 11, 17.) A photograph was taken of Defendant Blevins's face, but it is too blurry to discern the extent of any injuries. (Doc. 34-2; 34-3 at 17.) Later that day, Defendant Blevins went a local hospital for further evaluation, but there is nothing in the record indicating he received treatment. (*Id*.)

On February 3, 2020, Plaintiff was found guilty of battery/use of force on staff and failure to obey an order. (Doc. 34-3 at 19-21.) As punishment, he spent thirty days in punitive isolation, and his class was reduced. (*Id*.) Importantly, Plaintiff did not lose any good time credits. (*Id*.) After conducting an internal investigation of the January 29, 2020 incident, ADC officials exonerated Defendant Blevins of any wrongdoing. (*Id*. at 26.)

## IV. ANALYSIS

### A. *Heck* Doctrine

---

[2] In contrast, Defendants and the officer witnesses say Defendant Blevins was walking past Plaintiff on the narrow tier when Plaintiff leaned toward Defendant Blevins and yelled that he should stop being a racist. Defendant Blevins then stepped backwards, extended his arm with the palm out towards Plaintiff, and gave him a direct order to back up. As Defendant Blevins put his hand down, Plaintiff lunged forward and headbutted Defendant Blevins in the face. Defendant Blevins and the witnesses say he did *not* touch Plaintiff. (Dos. 34-2; 34-3 at 4-17.) But, at summary judgment, I must construe the disputed evidence in Plaintiff's favor.

Defendants argue Plaintiff's constitutional claims against him are barred by the *Heck* doctrine because he was found guilty, during prison disciplinary proceedings, of failing to obey a direct order and using force on an officer. I disagree.

In *Heck v. Humphrey*, 512 U.S. 477, 487 (1994), the United States Supreme Court held that if a judgment in favor of a prisoner would necessarily imply the invalidity of the criminal conviction, continued imprisonment, or sentence, then a prisoner cannot bring a § 1983 claim until the conviction or sentence is reversed, expunged, or called into question by the highest state court or by the issuance of a federal writ of habeas corpus. Under some state statutes, the loss of good time credits can result in a shortened criminal sentence. Thus, the *Heck* rule can only apply to prison disciplinary proceedings when good time credits are lost. *See Edwards v. Balisok*, 520 U.S. 641, 648 (1997); *Portley-El v. Brill*, 288 F.3d 1063, 1066 (8th Cir. 2002); *Sheldon v. Hundley*, 83 F.3d 231, 233-34 (8th Cir. 1996). Here, the parties agree Plaintiff did *not* lose any good time credits as a result of his disciplinary convictions. Thus, the *Heck* doctrine is inapplicable.

**B. Qualified Immunity**

Defendants also argue they are entitled to qualified immunity on the remaining constitutional claims. Qualified immunity protects government officials who acted in an objectively reasonable manner and shields them from liability when their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not fact. *McClendon v. Story Cty. Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (the privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is

erroneously permitted to go to trial").

Defendants are entitled to qualified immunity if: (1) the facts, viewed in the light most favorable to Plaintiff, do not establish a constitutional violation; or (2) the constitutional right was not clearly established at the time of the alleged violation, such that reasonable officials would not have known their actions were unlawful. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *Cullor v. Baldwin*, 830 F.3d 830, 836 (8th Cir. 2016). Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 232; *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 528 (8th Cir. 2009). For the following reasons, I conclude Defendants are entitled to qualified immunity from each of Plaintiff's constitutional claims based on the first prong of the analysis.

**1. Excessive Force Claim**

Plaintiff says Defendant Blevins used excessive force against him on January 29, 2020. Because Plaintiff was a convicted prisoner, his excessive force claim must be evaluated under the Eighth Amendment. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). To defeat qualified immunity and proceed to trial, Plaintiff must have evidence Defendant Blevins used force "maliciously and sadistically to cause harm," rather than in "a good-faith effort to maintain or restore discipline." *See Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *Santiago v. Blair*, 707 F.3d 984, 990 (8th Cir. 2013). The relevant factors that must be considered when making this determination are the objective need for force; the relationship between the need and the amount of force used; the threat reasonably perceived by Defendant Blevins; any efforts by Defendant Blevins to temper the severity of his forceful response; and the extent of Plaintiff's injuries. *See Jackson v. Gutzmer*, 866 F.3d 969, 974 (8th Cir. 2017); *Ward v. Smith*, 844 F.3d 717, 721-22 (8th

Cir. 2016).

The evidence viewed in the light most favorable to Plaintiff is that, at most, Defendant Blevins "touched" Plaintiff on the chest and "pushed" him with such little force that Plaintiff, who was standing on one foot with his arms handcuffed behind his back, did not fall down. The law is well settled that "not every push or shove violates the Constitution." *Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir. 2008); *see also Hudson*, 503 U.S. at 9 ("not . . . every malevolent touch by a prison guard gives rise to a federal cause of action"). Thus, an Eighth Amendment claim cannot be based on a *de minimis* amount of force, such as the minimal amount of force Defendant Blevins allegedly used on Plaintiff. *See Williams v. Jackson*, 600 F.3d 1007, 1012 (8th Cir. 2010) ("a *de minimis* application of force will not result in a constitutional violation"). And importantly, Plaintiff concedes he did not suffer any injuries as a result of Defendant Blevins's actions. As explained by the United States Supreme Court, an "inmate who complains of a push or shove that causes no discernable injury almost certainly fails to state a valid excessive force claim." *Wilkins v. Gaddy*, 599 U.S. 34, 38 (2010). The lack of an injury, while not dispositive of an excessive force claim, is "informative as to the likely degree of force applied." *Williams*, 600 F.3d at 1012. And here it is clear - based on the undisputed medical records, Plaintiff's deposition testimony, and his affidavit - that the force allegedly used by Defendant Blevins was *de minimis*. Accordingly, Defendant Blevins is entitled to qualified immunity, and Plaintiff's excessive force claim against him is dismissed with prejudice.

**2. Retaliation Claim**

Plaintiff alleges Defendant Blevins touched or pushed him on January 29, 2020, to retaliate against him for filing a grievance against him on January 21, 2020. Defendant Blevins argues "because Waller's claim of excessive force fails as a matter of law so too does his claim of

retaliation against Defendant Blevins." (Doc. 35 at 6.) I disagree. "The retaliatory conduct itself need not be a constitutional violation; the violation is acting in retaliation for the exercise of a constitutionally protected right." *Spencer v. Jackson Cnty.*, 738 F.3d 907, 911 (8th Cir. 2013). Plaintiff had a constitutional right to file a grievance against Defendant Blevins. *See Gonzalez v. Bendt*, 971 F.3d 742, 745 (8th Cir. 2020); *Beaulieu v. Ludeman*, 690 F.3d 1017, 1025 (8th Cir. 2012). Thus, Plaintiff could have a viable retaliation claim even if the amount of force used by Defendant Blevins was not excessive.

To defeat qualified immunity and proceed to trial, Plaintiff must have evidence that: (1) he engaged in a protected activity; (2) Defendant Blevins took adverse action against him that would chill a person of ordinary firmness from continuing in the activity; and (3) the adverse action was motivated at least in part by the exercise of the protected activity. *Gonzalez*, 971 F.3d at 745; *Spencer*, 738 F.3d at 911. The evidence, viewed in the light most favorable to Plaintiff, falls short on the third requirement.

During his deposition, Plaintiff said Officer Burton and Defendant Titus did not handcuff him through the bars or go inside of his cell to shackle him, as was the usual procedure. (Doc. 34-1 at 11-12.) Instead, Officer Burton allegedly opened the door and walked into Plaintiff's the cell to cuff him. (*Id*.) This made Plaintiff believe there was a "set-up" to "trick" him "into running out of the cell to attack staff members or create some type of negative situation so that the staff would have unlimited access to commit abuse" on him "under the pretense or under the factual proof that he attacked him." (*Id.* at 12.) But, Officer Burton and Defendant Titus had no motive to retaliate against Plaintiff. *See Bitzan v. Bartruff*, 916 F.3d 716, 717 (8th Cir. 2019) (affirming summary judgment were there was no evidence connecting several defendants to the allegedly retaliatory conduct); *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) (§ 1983 liability

requires a causal link to, and direct responsibility for, the alleged deprivation of rights). And, Plaintiff's theory that the officers were conspiring with Defendant Blevins to retaliate against him is based on pure speculation without any evidentiary support. *See Cooper v. Schriro*, 189 F.3d 781,784 (8th Cir. 1999) (mere speculative or conclusory allegations are insufficient to support a retaliation claim).

Also, I note that when Defendant Blevins touched Plaintiff on January 29, 2020, the informal resolution had only been reviewed by the initial problem solver, who reported that Defendant Blevins denied making the racial slurs or being in the area when it was said. (Doc. 2 at 42.) Significantly, Plaintiff had not yet filed a grievance to the Warden and no adverse action of any kind had been taken against Defendant Blevins. (*Id*.) Further, during his deposition, Plaintiff admitted the tier they were standing on was narrow. (Doc. 34-1 at 31-32.) Thus, it was equally possible that Defendant Blevins stepped directly in front of Plaintiff to intimidate him (as claimed by Plaintiff) or that he was trying to walk past Plaintiff on the narrow tier (as asserted by Defendant Blevins and the officer witnesses). Although Plaintiff said he attempted to "diffuse the situation" by accusing Defendant Blevins of using a racially hostile word, that statement most likely had the opposite effect. (*Id.* at 15.) This is especially true in light of Plaintiff's admission during his deposition that he spoke in an "aggressive," "accusatory," and "passionate" manner to Defendant Blevins immediate before he "touched" his chest and "pushed" him. (*Id*. at 17, 44.) Thus, Plaintiff's own testimony indicates any physical contact was caused by a conversation started by Plaintiff on January 29, and not by the grievance he filed on January 21.

To avoid summary judgment, a prisoner must have "affirmative evidence of a retaliatory motive." *Lewis v. Jacks*, 486 F.3d 1025, 1029 (8th Cir. 2007). A prisoner has a "heavy evidentiary burden" to produce such evidence, and "[m]erely alleging that an act was retaliatory," as Plaintiff

has done here, "is insufficient." *Meuir v. Greene Cty. Jail Emps.*, 487 F.3d 1115, 1119 (8th Cir. 2007). Because Plaintiff has not sustained his burden of producing any such evidence, I conclude Defendant Blevins is entitled to qualified immunity. Consequently, Plaintiff's retaliation claim is dismissed with prejudice.

**3. Failure to Protect Claim**

Finally, Plaintiff alleges Defendant Titus failed to protect him by not stepping in front of him when Defendant Blevins allegedly stood directly in front of him in an intimidating manner. (Doc. 34-1 at 16.) Correctional officers have a constitutional duty to stop the excessive use of force by another officer. *Krout v. Goemmer*, 583 F.3d 557, 565 (8th Cir. 2009). But, for the reasons, previously explained, I concluded there is no evidence Defendant Blevins used excessive force against Plaintiff.

Further, to avoid qualified immunity and proceed to trial on a failure to protect claim, there must be evidence that: (1) objectively, there was a substantial risk of serious harm; and (2) subjectively, Defendant Titus knew of and disregarded that substantial risk of serious harm. *Blair v. Bowersox*, 929 F.3d 981, 987 (8th Cir. 2019); *Patterson v. Kelley*, 902 F.3d 845, 851 (8th Cir. 2018). As to the second element, the Eighth Circuit has emphasized that deliberate indifference includes something more than negligence or even gross negligence. *Patterson*, 902 F.3d at 852 (8th Cir. 2018); *Tucker v. Evans*, 276 F.3d 999, 1002 (8th Cir. 2002). Instead, deliberate indifference "requires proof of a reckless disregard of the known risk." *Holden v. Hirner*, 663 F.3d 336, 341 (8th Cir. 2011).

According to Plaintiff, Defendant Blevins did a "fake out" by acting like he was walking away, suddenly turning around, and touching or pushing him in the chest. But, there is no evidence Defendant Titus subjectively knew Defendant Blevins was going to do so. *See Schoelch v.*

*Mitchell*, 625 F.3d 1041,1046 (8th Cir. 2010) (to be a constitutional violation, the official must both be "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference"). And, because all parties agree the incident occurred quickly, there clearly was no time for Defendant Titus to intervene. *See Tucker*, 276 F.3d at 1002 (affirming qualified immunity on a failure to protect claim because "by the time [the defendant] knew something was wrong, the fight was already over" and the defendant "would not have been able to intervene"). For these reasons, I also conclude Defendant Titus is entitled to qualified immunity, and Plaintiff's failure to protect claim against her is dismissed with prejudice.

## V. CONCLUSION

IT IS, THEREFORE, ORDERED that:

1. Defendants' Motion for Summary Judgment (Doc. 34) is GRANTED.

2. Plaintiff's excessive force, retaliation, and failure to protect claims against Defendants Blevins and Titus are DISMISSED with prejudice, and this case is CLOSED.

3. I certify that, pursuant to 28 U.S.C. § 1915(a)(3), an *in forma pauperis* appeal from this Order or the accompanying Judgment would not be taken in good faith.

DATED this 1st day of February 2021.

JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE